Michael E. Stone, State Bar No. 46016
Leo B. Siegel, State Bar No. 116841
STONE • SIEGEL LAW FIRM
1726 Seabright Ave.
Santa Cruz, CA 95062
Telephone:   831-713-5773
Facsimile:   831-713-5797

Attorney for Plaintiffs Michael Wasserburger,
Ariana Wassenburger, and Math Enrichment, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: | CASE NO. 12-50361-CN |
| SARAMINO DEVELOPMENT, LLC. | CHAPTER 7 |
| Debtor. | Adversary No._____ |
| _____ / | **COMPLAINT FOR INTENTIONAL MISREPRESENTATION, NEGLIGENT MISREPRESENTATION, RESCISSION AND IMPOSITION OF CONSTRUCTIVE TRUST, RENT SKIMMING, BREACH OF FIDUCIARY DUTY AND DECLARATORY RELIEF** |
| MICHAEL WASSERBURGER, ARIANA WASSERBURGER, MATH ENRICHMENT, LLC, <br> Plaintiffs <br> v. <br> SARAMINO DEVELOPMENT LLC, IFTIKHAR AHMED, FARAH FARUQUI, DOES 1-20, <br> Defendants. <br> _____ / | |

Plaintiffs Michael Wasserburger, Ariana Wasserburger, and Math Enrichment LLC, complain of Defendants and allege as follows:

1. On or about October 3, 2011, Debtor Saramino Development, LLC, filed a chapter 13 bankruptcy petition. On or about October 2011, said bankruptcy was converted

to a Chapter 7 proceeding. And said proceeding was not dismissed until March 12, 2012.

2. Meanwhile, Debtor filed another bankruptcy petition, purported to be a pro per Chapter 11, on January 18, 2012. On or about January 18, 2012, the Fuller Law Firm was "substituted" in as Debtor's attorneys. Debtor's Chapter 11 plan was never approved and on or about March 20, 2013, the proceeding was converted to a Chapter 7 bankruptcy and Mohammed Poonja was appointed trustee.

3. Plaintiffs Michael Wasserburger and Ariana Wasserburger are, and at all times mentioned herein were, husband and wife and residents of Santa Clara County, California.

4. Plaintiff Math Enrichment LLC, is a California Limited Liability Company duly organized and doing business in the State of California, with its principal place of business in Santa Clara County, California.

5. Plaintiffs are unaware of the true names and capacities of Defendants named herein as Does 1-20, inclusive, and therefor designate them fictitiously as Does. When their true names and/or capacities become known, Plaintiffs will substitute said names and capacities for the fictitious names. Plaintiffs allege that each of said Defendants is responsible for and/or liable for the acts, omissions, and resulting damages hereinafter alleged.

6. Defendants Iftikhar Ahmed and Farah Faruqui are husband and wife and at all relevant times were residents of Santa Clara County, California. Defendant Iftikhar Ahmed was at all times herein mentioned a real estate broker, licensed as such by the State of California.

7. Each defendant was the agent of the other in doing the acts, entering the agreements, and making the hereinafter representations.

8. Plaintiffs are informed and believe, and thereon allege, that Defendant Saramino Development LLC (also referred to sometimes as the "Debtor" and sometimes as "Sarmino") was at all relevant times a limited liability company formed and operated by Defendants Iftikhar Ahmed (hereafter "Ahmed") and Farah Faruqui (hereinafter "Faruqui"), and so totally controlled by them that Saramino was the alter ego of said

Defendants. At all times relevant herein, there was such a unity of interest and ownership that separate personalities no longer existed; and a failure to disregard their separate identities would result in fraud or injustice.

9. Plaintiffs are informed and believe, and thereon allege, that funds that were paid to Saramino were deposited into accounts held by Defendants Ahmed and/or Faruqui, and vice versa, such that there was such co-mingling of monies and assets by said Defendants that any adherence to the fiction of the separate existence of Saramino as distinct from Defendants Ahmed and/or Faruqui would permit an abuse of the corporate privilege and sanction fraud and inequity.

10. This Court has jurisdiction over the Adversary Proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, as this case is related to a bankruptcy case filed herein, to wit: In re Saramino Development LLC, Debtor, Case No. 12-50361-CN.

11. Venue in this Court is proper pursuant to 28 U.S.C. § 1409 as this adversary proceeding arises under Title 11, is related to a case under Title 11 that is pending in this Court, and involves funds presently being held and administered by the Chapter 7 Trustee appointed in the related case.

12. This matter is a core proceeding under 28 U.S.C. §§ 157 (b)(2)(A), 157 (b)(2)(B), 157 (b)(2)(I), 157 (b)(2)(M) and 157 (b)(2)(O).

13. At all relevant times prior to January 4, 2013, Defendants were the owners of real property commonly known as 15160 El Camino Senda, Saratoga, CA 95070 (hereinafter the "Saratoga property"). While Defendants Ahmed and Faruqui referred to the Saratoga property as their property, and dealt with it as such, they placed the record title in the name of Defendant Saramino.

14. On or about July 18, 2008, Defendants obtained a loan from Vineyard Bank and secured the same with a deed of trust against the Saratoga property. In or around January 2011, Defendants defaulted on the loan and the bank, or its successor, commenced a non-judicial foreclosure proceeding in May of 2011.

15. Plaintiffs are informed and believe, and thereon allege, that on or about July

7, 2011, Defendants filed a lawsuit in Santa Clara County Superior Court seeking to enjoin the foreclosure (hereinafter the "State Court action"). The State Court did not issue the requested injunction, and that is apparently why the October 3, 2011, bankruptcy petition (alleged above) was filed by Defendants. The State Court action remains active and pending to this date.

16. Eventually, the bank obtained relief from the Bankruptcy Court to continue with its non-judicial foreclosure, and on January 8, 2013, a Trustee's Deed was issued to the bank, as the successful bidder at the foreclosure sale, for $3,413,000 (the original loan amount was $3,310,000). At the time of the foreclosure sale, the bank claimed that the outstanding debt was $4,256,602.36. Plaintiffs are informed and believe and thereon allege that said amount was greatly exaggerated and included "default interest" (unlawful liquidated damages in California) and unawarded attorney's fees (over $100,000 claimed, though the bank was never declared a prevailing party nor awarded any fees).

17. On or about December 1, 2011, and while Debtor was in bankruptcy, Defendants marketed the Saratoga property as a rental with potential purchase option, and began negotiating with Plaintiffs. At no time during those negotiations was it ever disclosed by Defendants, or any of them, that the property was in foreclosure, nor that it was subject to pending bankruptcy proceedings.

18. What Defendants did represent was that the house on the property had been recently built in quality fashion, and that it had been inspected by the City of Saratoga and approved for occupancy. As alleged further herein, Plaintiffs have reason to believe that this representation was false.

19. Defendants further represented that they had a lawsuit pending (the State Court action) with the bank, but would have no problem settling it and paying off the underlying mortgage. They represented to Plaintiffs that the lawsuit was just a dispute over how much was owed on a construction loan.

20. On or about December 12, 2011, Plaintiffs and Defendants entered into an agreement, documented into separate instruments, one titled "Option to Purchase

4

Agreement" (hereinafter "Option") and the other titled "Lease Agreement" (hereinafter "Lease"). Copies of each are attached hereto, as Exhibits "A" and "B", respectively, and made apart hereof by reference.

21. While the Option called for an initial payment of $300,000, on or about January 10, 2012, Defendants agreed (in written correspondence ) to accept $200,000 as the initial payment.

22. On January 10, 2012, Plaintiffs paid to Defendants the sum of $125,000 (check was made payable to and was deposited by Defendant Ahmed in his personal bank account). And on January 27, 2012, Plaintiffs paid two more amounts to Defendants: $75,000 on the Option (again to Defendant Ahmed, per his request, and deposited by him into his personal account) and another $20,000 made payable to Defendant Saramino.

23. Also on January 27, 2012, when Plaintiffs tendered the $75,000 payment, Defendants represented that they needed another document executed, titled Lease Agreement (hereinafter "Straight Lease") in order to show the State Court an income stream on the Saratoga property and get a settlement with the bank approved. Plaintiffs did sign said instrument, as requested, and a true copy is attached hereto as Exhibit "C" and made a part hereof by reference.

24. The $20,000 payment made by Plaintiffs was supposed to be in accordance with the "Straight Lease", $5,000 a Security Deposit and $15,000 to be rent. But, per the Straight Lease, the agreement was "subject to Court approval" and to Plaintiffs' knowledge, Defendants never obtained said Court approval.

25. On or about February 10, 2012, Defendant Ahmed represented to Plaintiffs that he needed to show another $20,000 to the Court as income so he gave Plaintiffs a $20,000 check drawn on his Patelco Credit Union account and they, in exchange, gave him a $20,000 check.

26. Plaintiffs took occupancy of the Saratoga property, on, or about February 8, 2012, and continued to occupy it until March 6, 2012, when they had to vacate for a three-week period.

27. As it turns out, and one for the reasons that Plaintiffs believe that Defendants did not get final approval and an occupancy permit, the sewer lines from the house were not connected to the public sewer line. That caused a sewage back-up and flooding, damaging a lot of the Saratoga property downstairs, as well as some of Plaintiffs' personal property. It also caused Plaintiffs to have to vacate the property and temporarily rent elsewhere.

28. When Plaintiffs brought the sewage problem to the attention of Defendants, Defendants represented that they did not have the funds to immediately make the repairs, that they had insurance that would cover the costs and damages, and that if Plaintiffs would advance the funds by paying for the necessary repairs themselves, Defendants would cause the insurance reimbursement check to be endorsed over to Plaintiffs. Defendants failed to disclose that the bank would also be named as a payee on the eventual insurance check issued by the carrier.

29. In reliance upon Defendants' assurance of repayment and at Defendant's request, Plaintiffs did pay the costs of repairs directly to the contractors and materials making said repairs. Plaintiffs paid in excess of $185,000 for said repairs, and provided Defendants (as well as the bank and the Bankruptcy Trustee) with proof thereof (invoices, cancelled checks, charge card receipts, etc).

30. After the repairs were completed, Plaintiffs made another two payments to Defendants, one a $15,000 check made payable to Defendant Ahmed and the other $4,000 check to Defendant Saramino, both on or about March 28, 2012.

31. During the next 60 days, Plaintiffs caused some $43,013 in construction repairs to be made to the Saratoga, including a rewiring of the house because the original wiring had been chewed up by rats prior to Plaintiffs' occupancy, pumps that did not function, plumbing that was installed incorrectly (hot/cold reversed, etc.), and other repairs needed for house to be Building Code compliant. Plaintiffs paid for the repairs with the understanding that the payments would be reimbursed or set off against their monthly payments to Defendants.

6

COMPLAINT FOR INTENTIONAL MISREPRESENTATION, NEGLIGENT MISREPRESENTATION, RESCISSION AND IMPOSITION OF CONSTRUCTIVE TRUST, RENT SKIMMING, BREACH OF FIDUCIARY DUTY AND DECLARATORY RELIEF

Case: 14-05092    Doc# 1    Filed: 09/05/14    Entered: 09/05/14 09:16:28    Page 6 of 16

\\10.1.10.22\Public\Clients\Wasserburger\Complaint8-27-14 .wpd

32. In addition, Plaintiffs invested another $117,000 in improvements to the Saratoga property (shutters, cabinets, home theater, home office, closet inserts, shelving). While Plaintiffs were not expecting to be reimbursed for these additional improvements, they only made the improvements in reliance on the agreements and representations made by Defendants, and at the time when they were still without knowledge of the pending bankruptcy and foreclosure.

33. On, or about May 1, 2012, Plaintiffs tendered another payment to Defendants, this one for $300,000, but before the check was negotiated, Plaintiffs learned, for the first time, that the Saratoga property was under bankruptcy supervision and had a foreclosure pending on it. Consequently, Plaintiffs immediately stopped payment on said $300,000 check and thereafter stopped making any payments to Defendants. Plaintiffs also learned that their prior deposit had not been placed in an escrow by Defendants as required in the Option, nor even deposited in Defendants' broker's trust account.

34. On information and belief Plaintiffs allege that on or about July 12, 2012, State Farm issued a check for the sewage damages and repairs. Said check was for the sum of $184,179.41, and was made payable to "Iftikhar Ahmed and Frarah Faruqui, California Bank & Trust, and Saramino Development Company". Aware that Plaintiffs had paid for the repairs, the bank refused to endorse the check over to Defendants unless it was either paid over to Plaintiffs or, at least, deposited into a blocked account until it was determined how much of it belonged to Plaintiffs. Eventually the check was endorsed and negotiated, with the funds deposited in to an account "subject to court order".

35. Plaintiffs have never been reimbursed for any of the repairs paid for by them, despite Defendants' written assurances.

36. Paragraph 4 of the Option Agreement provided, and Defendants expressly represented, that if Defendants failed to settle with the back and were unable to pay off the bank's mortgage, the agreement would be "deemed Null and Void" and "Guarantor" (Defendant Ahmed) would refund the "entire deposit, without deduction or delay".

37. At some point during the Debtor-In-Possession stage of the underlying

7
COMPLAINT FOR INTENTIONAL MISREPRESENTATION, NEGLIGENT MISREPRESENTATION, RESCISSION AND IMPOSITION OF CONSTRUCTIVE TRUST, RENT SKIMMING, BREACH OF FIDUCIARY DUTY AND DECLARATORY RELIEF
\\10.1.10.22\Public\Clients\Wasserburger\Complaint8-27-14 .wpd

Case 14-05092    Doc# 1    Filed: 09/05/14    Entered: 09/05/14 09:16:28    Page 7 of 16

bankruptcy, Defendants caused Plaintiffs' deposits, as well as rent payments and the insurance reimbursement funds, to be placed in a Debtor-In-Possession bank account (although very belatedly, Plaintiffs are informed, and only at the bank's insistence).

38. After the bankruptcy was converted from a Chapter 11 to a Chapter 7 on March 20, 2013, the Debtor-In-Possession account, including the $239,000 paid by Plaintiffs and $184,000 insurance/repairs reimbursement proceeds, was turned over to Mohamed Poonja, the Chapter 7 Bankruptcy Trustee. To this date there has been no refund to Plaintiffs nor any reimbursement for repairs.

39. Plaintiffs are informed and believe and thereon allege that because the bank, California Bank & Trust, caused a non-judicial foreclosure sale under the power of sale in the Deed of Trust that it held against the Saratoga property, it has no lawful claim to the funds being held by the Bankruptcy Trustee, pursuant to California Code of Civil Procedure §580d, which provides that "no deficiency shall be owed or collected; and no deficiency judgment shall be rendered" on a note that was secured by a Deed of Trust after a sale under the power of sale in said Deed of Trust.

40. Plaintiffs are further informed and believe and thereon allege that the fair market rental value of the Saratoga property during their term of occupancy was $10,000 per month.

41. Plaintiffs occupied the Saratoga property from February 8, 2012 to January 4, 2013 (date of foreclosure) , less three weeks loss of use during the sewage flood and repairs, for a total of 10 full months of occupancy , which would be $100,000 for fair market rent. Plaintiffs allege that said fair market rent is the most that should be allowed to Defendant Saramino or its bankruptcy estate, as a set off against the claims made herein by Plaintiffs.

## FIRST CLAIM FOR RELIEF
(Intentional Misrepresentation and Concealment)

42. Plaintiffs re-allege and incorporate by reference all of the Preliminary Allegations above, the same as if set forth hereat in full.

8

COMPLAINT FOR INTENTIONAL MISREPRESENTATION, NEGLIGENT MISREPRESENTATION, RESCISSION AND IMPOSITION OF CONSTRUCTIVE TRUST, RENT SKIMMING, BREACH OF FIDUCIARY DUTY AND DECLARATORY RELIEF

Case: 14-05092    Doc# 1    Filed: 09/05/14    Entered: 09/05/14 09:16:28    Page 8 of 16

\\10.1.10.22\Public\Clients\Wasserburger\Complaint8-27-14 .wpd

43. At the time that Defendants made the representations to Plaintiffs and omitted to disclose the pending foreclosure and bankruptcy, they knew the representations to be false; and they knew that the omitted disclosures were material facts required to be disclosed to potential buyers and/or lessees.

44. Plaintiffs relied on the representations made, and their lack of awareness of the pending bankruptcy and foreclosure, and did pay the monies hereinabove alleged. Said reliance was reasonable not only because Plaintiffs had no reason to disbelieve Defendants, but because Defendants held themselves out as knowledgeable in real estate, Defendant Ahmed was a licensed real estate broker, and Defendants represented that they could be trusted by Plaintiffs.

45. The true facts were that the house was poorly constructed, probably was not inspected and approved for occupancy, Defendants never intended to escrow the Option money, Defendants never intended to give Plaintiffs the insurance proceeds to reimburse them for repairs, and Defendants lacked legal authority to sell the property or even to lease it long-term. Moreover, the pending foreclosure and bankruptcy would put Plaintiffs at risk, and Defendants would not, could not, or both, refund Plaintiffs' money if unable to settle the loan with the bank or pay it off.

46. Had Defendants disclosed the pending foreclosure and bankruptcies, Plaintiffs would not have entered the transaction, would not have paid monies to Defendants, and would not have spent money on repairs and improvements to the Saratoga property.

47. As a proximate result of Defendants' misrepresentations, omissions and concealments, Plaintiffs have been damaged in the sum of $593,000 or such greater sum as may be proven at trial.

48. Defendants' misrepresentations, omissions and concealments, as alleged above, were willful, fraudulent, malicious and/or wanton, done without regard or concern for Plaintiffs' rights and well-being. As a result, exemplary and/or punitive damages should be awarded against them.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

(Negligent Misrepresentations and Omissions)

49. Plaintiffs re-allege and incorporate by reference all of the Preliminary Allegations above, the same as if set forth hereat in full.

50. When Defendants made the representations set forth above, they had no reasonable grounds for believing them to be true. And when they failed to disclose the pending foreclosure and bankruptcies, they had no reasonable basis for doing so.

51. Defendants made the representations, as well as omitted to disclose the pending foreclosure and bankruptcies, with the knowledge that Plaintiffs would rely on them in acting as they did, enter the transaction as they did, and pay the monies as they did.

52. Plaintiffs reasonably relied upon the representations and lack of disclosure of the pending foreclosure and bankruptcies, and did enter the transaction, take occupancy of the Saratoga property, pay monies to Defendants, and pay for repairs and improvements to the Saratoga property. Had Plaintiffs known the true facts, they would not have done any of said acts or paid said monies.

53. As a proximate result of Defendants' negligent misrepresentations and omissions to disclose material facts, Plaintiffs have been damaged in the sum of $593,000 or such greater sum as may be proven at trial.

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

## THIRD CLAIM FOR RELIEF

(Rescission and Imposition Of Constructive Trust)

54. Plaintiffs re-allege and incorporate by reference all of the Preliminary Allegations above as well as the allegations in paragraphs 43 through 48 and 50 through 53 above, the same as if set forth hereat in full.

55. By reason of the foregoing acts, misrepresentations and concealments, Plaintiffs are entitled to and do hereby rescind the Option, Lease and Straight Lease alleged above.

10

COMPLAINT FOR INTENTIONAL MISREPRESENTATION, NEGLIGENT MISREPRESENTATION, RESCISSION AND IMPOSITION OF CONSTRUCTIVE TRUST, RENT SKIMMING, BREACH OF FIDUCIARY DUTY AND DECLARATORY RELIEF

Case: 14-05092   Doc# 1   Filed: 09/05/14   Entered: 09/05/14 09:18:28   Page 10 of 16

\\10.1.10.22\Public\Clients\Wasserburger\Complaint8-27-14 .wpd

56. Plaintiffs offer to return to Defendants everything of value received by them as a result of the transactions entered into with Defendants, and do hereby demand a return of everything of value given by Plaintiffs to Defendants, including but not limited to the $239,000 paid to Defendants per the agreements, the $184,000 paid for insurance covered repairs, $43,000 paid for construction defect repairs, and $117,000 in improvements made to the Saratoga property.

57. As part and parcel to their right to rescission of the transaction, Plaintiffs are entitled to and do hereby seek the imposition of a constructive trust on their monies put into the bankruptcy accounts by Defendants, including the $239,000 still being held in the account by the Trustee, as well as the $184,000 insurance proceeds being held by Trustee.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## FOURTH CLAIM OF RELIEF

### (Rent Skimming)

58. Plaintiffs re-allege and incorporate by reference all the Preliminary Allegations above the same as though set forth hereat in full.

59. Plaintiffs are informed and believe and thereon allege that their occupancy of the Saratoga property was during the first year of completion (or substantial completion) of the house on the Saratoga property, and therefore use of their monies paid to Defendants during the occupancy constituted "rent skimming " as that term is used in California Civil Code § 890 .

60. Defendants did fail to apply the monies received from Plaintiffs, or an equivalent amount, to the payments due on the deed of trust encumbering the Saratoga property. And the Saratoga property did get sold at a foreclosure sale, with Plaintiffs required to move therefrom.

61. As a proximate result of Defendants rent skimming, Plaintiffs suffered actual damages in the amount of $593,000, plus moving expenses in an amount to be proven at trial, and are entitled to recover the same plus their reasonable attorneys fees and costs incurred herein, from Defendants, and each of them .

11

COMPLAINT FOR INTENTIONAL MISREPRESENTATION, NEGLIGENT MISREPRESENTATION, RESCISSION AND IMPOSITION OF CONSTRUCTIVE TRUST, RENT SKIMMING, BREACH OF FIDUCIARY DUTY AND DECLARATORY RELIEF

Case: 14-05092   Doc# 1   Filed: 09/05/14   Entered: 09/05/14 09:16:28   Page 11 of 16

\\10.1.10.22\Public\Clients\Wasserburger\Complaint8-27-14 .wpd

62. The payments due on the deed of trust being foreclosed at the time that Plaintiffs rented the Saratoga property from Defendants were more than two months delinquent, and as a result, Plaintiffs are entitled to a statutorily mandated award of exemplary damages in an amount at least three times the amount of their actual damages (per California Civil Code § 891 (d)).

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## FIFTH CLAIM FOR RELIEF

(Breach Of Fiduciary Duties against Iftkhar Ahmed)

63. Plaintiffs re-allege and incorporate by reference all of Preliminary Allegations above, as well as the allegations in paragraphs 43 through 62 above, the same as set forth hereat in full.

64. At all times relevant, Defendant Iftikhar Ahmed was a real estate broker licensed by the state of California, and held himself out as an experienced, knowledgeable and trustworthy person in real estate transactions.

65. As a licensed real estate broker at all times relevant herein, Defendant Ahmed owed Plaintiffs a fiduciary duty of honesty and complete disclosure.

66. At all times relevant herein Defendant Ahmed was aware that Plaintiffs were not being represented by an independent real estate broker and were relying on the knowledge, experience, complete disclosure, and honesty of Defendant Ahmed.

67. In doing the acts hereinabove alleged, making the misrepresentations alleged, failing to make complete and accurate the disclosures as alleged, and by rent skimming (taking monies from Plaintiffs without first applying said monies to the underlying deed of trust ), Defendant Ahmed breached his fiduciary duties owed to the Plaintiffs.

68. As a direct and proximate result of Defendant Ahmed's breach of fiduciary duties, Plaintiffs have been damaged in the sum of $593,000, or such greater sum to be determined according to proof .

69. Defendant Ahmed's breaches of fiduciary duties owed to Plaintiffs were done with full knowledge of the consequences and damages that would be caused to Plaintiffs.

As a result, Defendant Ahmed's conduct was willful, oppressive and/or malicious, such that Plaintiffs are entitled to punitive and/or exemplary damages against Defendant Ahmed.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## SIXTH CLAIM FOR RELIEF

(Declaratory Relief)

70. Plaintiffs re-allege and incorporate by reference all of the allegations of the previous paragraphs, the same as if set forth hereat in full.

71. An actual controversy has arisen and now exists between Plaintiffs and Defendants, as well as the bankruptcy trustee for Defendant Saramino, concerning their respective rights and duties, in that:

a. Plaintiffs contend that the monies being held in the bankruptcy estate account belong to Plaintiffs; that the $239,000 paid to Defendants is being held pursuant to an express trust (pursuant to the documents described above), and the $184,000 from the insurance check is being held in constructive trust for Plaintiffs for the reasons alleged above; and that Plaintiffs are entitled to have said monies turned over to them. Plaintiffs are informed and believe, and thereon allege, that Defendants contend that said monies belong to the bankruptcy estate of Defendant Saramino and are subject to distribution among creditors and that Plaintiffs are just unsecured creditors.

b. Plaintiffs contend that because the bank caused the Saratoga property to be sold under the private power of sale in the deed of trust, there is no deficiency owed or that can be collected from Defendant Saramino or its bankruptcy estate, and particularly not from the Plaintiffs' monies being held by the bankruptcy trustee. Plaintiffs are informed and believe and thereon allege that the bankruptcy trustee (and therefor Defendant Saramino) contends that the bank holds a security interest in said monies and is a secured creditor of the estate, for the portion of the debt not satisfied by the non-judicial foreclosure sale.

c. Plaintiffs contend that if it is not found that the monies held in the bankruptcy

estate are being held in trust for Plaintiffs, arguendo, then Plaintiffs have a priority claim for monies spent to preserve an asset of the bankruptcy estate, to wit: $184,000 on sewage flood damage repairs and $43,000 on the construction defect repairs. Plaintiffs are informed and believe and thereon allege that Defendants dispute this and contend that Plaintiffs are just another unsecured general creditor for any and all of their damages.

      d.    Plaintiffs contend that the rental amount set forth in the Lease and/or the Straight Lease, has no relationship to reasonable market rent, that the market rent value during Plaintiffs' occupancy was $10,000 a month or less, and that Plaintiffs are not liable for anything more than said market value rent during the time of their actual occupancy up to the date of the foreclosure sale. Defendants contend, Plaintiffs believe and thereon allege, that Plaintiffs are responsible for $15,000 a month during their occupancy.

      e.    Plaintiffs contend that because of the bankruptcies that were pending, as well as because of Plaintiffs' rescission, the agreements (Option, Lease, and Straight Lease) are not, and never were, enforceable against Plaintiffs, as they were and are void contracts. Defendants, on the other hand, contend that they were enforceable agreements, that Plaintiffs were/are in default under the agreements, and that Defendants were somehow damaged by Plaintiffs' defaults (alleged), that Defendants Ahmed and Faruqui have valid creditor's claims in the bankruptcy estate, and that said Defendants are entitled to a distribution from Plaintiffs' funds being held in the bankruptcy estate.

      f.    Plaintiffs contend that even though they are void, this lawsuit concerns and was necessitated by the provisions of the agreement (Option, Lease and Straight Lease), and that by reason thereof, Plaintiffs are entitled to recover their reasonable attorneys' fees from Defendants. Plaintiffs believe and thereon allege that Defendants dispute this and contend that Plaintiffs are not entitled to recover attorneys' fees irrespective of how this action is resolved.

72.    Plaintiffs seek a judicial determination of the parties' rights and duties concerning the monies being held and the agreements as alleged (Option, Lease and Straight Lease).

14

COMPLAINT FOR INTENTIONAL MISREPRESENTATION, NEGLIGENT MISREPRESENTATION, RESCISSION AND IMPOSITION OF CONSTRUCTIVE TRUST, RENT SKIMMING, BREACH OF FIDUCIARY DUTY AND DECLARATORY RELIEF

Case: 14-05092    Doc# 1    Filed: 09/05/14    Entered: 09/05/14 09:16:28    Page 14 of 16

\\10.1.10.22\Public\Clients\Wasserburger\Complaint8-27-14 .wpd

73. A judicial declaration is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties with regard to monies held in the bankruptcy estate, and regarding the enforceability and responsibilities under the agreements, or any of them.

WHEREFORE, Plaintiffs pray that judgment be entered herein as follows:

1. For actual damages against Defendants, and each of them, in the sum of $593,000, or such greater sum as may established according to proof;

2. That the sum of $239,000 being held by the bankruptcy trustee be declared as to trust funds being held for Plaintiffs' benefit, and be ordered turned over to Plaintiffs, and thereafter credited against the $593,000 damages;

3. That the further sum of $184,000 be declared to be the subject of a constructive trust imposed by reason of the facts of this case, and thereupon also be ordered turned over to Plaintiffs by the bankruptcy trustee;

4. That the Option, Lease and Straight Lease described in the Complaint either be declared void ab initio or rescinded by Plaintiffs, and Defendants ordered to return everything of value given to them by Plaintiffs pursuant to said instruments, including but not limited to the $239,000 in payments, and Defendants further ordered to reimburse Plaintiffs the sum of $184,000 in sewage flood damage repairs, the $43,000 in defective construction repairs, and the $117,000 in improvements made to the Saratoga property;

5. That Defendants be found liable for rent skimming at a time when the deed of trust on the Saratoga property was more than two (2) months delinquent, and that by reason thereof, Defendants are statutorily liable to Plaintiffs for an amount at least three (3) times the actual damages;

6. For exemplary and/or punitive damages on the Fourth Claim of Relief, against Defendant Iftikhar Ahmed, according to proof;

7. For recovery of Plaintiffs' reasonable attorneys' fees;

8. For costs of suit incurred herein;

9. For a declaration that the monies being held by the bankruptcy trustee, in the

sums of $239,000 and $184,000, belong to Plaintiffs and are not subject to any other creditor's claims; that the bank that foreclosed on the Saratoga property, using the power of sale in the deed of trust, has no security interest in the monies being held by trustee in bankruptcy; that if the monies in the bankruptcy estate's account are not being held in trust for Plaintiffs, then Plaintiffs have a priority claim for monies paid to repair and preserve the Saratoga property (an asset of the estate) in the sums of $184,000 for the sewage flood damages and $43,000 for the construction defects; that the fair market rental value of the Saratoga property during Plaintiffs' occupancy was $10,000 a month or less, and that is all that Plaintiffs are responsible for; that the Option, Lease and Straight Lease described in the Complaint and attached thereto were never enforceable against the Plaintiffs, and Plaintiffs are not liable for any defaults under said agreements; and that this action concerns the provisions and enforceability of said agreements, such that Plaintiffs are entitled to recover their reasonable attorneys' fees incurred in pursuing this action; and

10. For such other and further relief as the court may deem just and appropriate.

DATED: September __7__, 2014        By: _____
                                         Michael E. Stone
                                         Attorney for Plaintiffs